DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

————————————————

THE HANOVER INSURANCE GROUP, INC; and MICHAEL ARLINE, JR.,

Appellants,

v.

LUKE FRAZIER,

Appellee.

No. 2D22-1689

————————————————

April 3, 2024

Appeal from the Circuit Court for Hillsborough County; Emmett L. Battles, Judge.

Sharon C. Degnan of Kubicki Draper, Orlando, for Appellants.

Kerry C. McGuinn, Jr., and Carla M. Sabbagh of Rywant, Alvarez, Jones, Russo & Guyton, PA, Tampa; and Brigid F. Cech and Bethany J.M. Pandher of Greenberg Traurig, P.A., Miami, for Appellee.


KELLY, Judge.

Appellee Luke Frazier sued The Hanover Insurance Group, Inc., and Michael Arline, Jr., an employee in Hanover's Special Investigations Unit, for malicious prosecution after Frazier was acquitted of charges of making a false statement in support of an insurance claim and grand theft arising from statements Frazier made to Hanover in connection with

an insurance claim. Hanover and Arline responded, asserting immunity from suit under section 626.989(4)(c), Florida Statutes (2011), which provides immunity from civil liability to persons furnishing information related to suspected fraudulent insurance acts. Both at the summary judgment stage and at trial, the trial court rejected the claims of immunity and ultimately entered judgment in favor of Frazier. In this appeal, Hanover and Arline argue, among other things, that the trial court erred when it rejected their claims of immunity. We agree and reverse.[1]

Before reciting the facts surrounding Frazier's claim of malicious prosecution, we think it is important to understand the statutory scheme underlying the events leading to the filing of criminal charges against Frazier. Every insurer admitted to do business in Florida is statutorily required to establish and maintain an "anti-fraud investigative unit" or division, commonly called a special investigations unit (SIU), to investigate and report possible fraudulent insurance acts by insureds or by persons making claims against policies held by insureds. *See* § 626.9891(1).[2] If an insurer has knowledge or believes that a fraudulent insurance act that would be a felony or misdemeanor has been committed, it must send a report to the Division of Investigative and Forensic Services ("DIFS"), a unit of the Department of Financial

---

[1] Hanover and Arline also unsuccessfully sought a directed verdict and judgment notwithstanding the jury verdict, arguing Frazier's evidence was insufficient to prove malicious prosecution, an issue they have pursued in this appeal as well. We need not reach the issue because our determination that Hanover and Arline had immunity from suit is dispositive.

[2] In the current version of the statute, this provision appears in subsection (2). *See* § 626.9891(2), Fla. Stat. (2023).

Services, detailing the information it has giving rise to its suspicion. *See* § 626.989(6).[3] This reporting is mandatory. Individuals can also file reports with DIFS. *Id.* Upon receiving a report, DIFS conducts an independent investigation to determine the extent, if any, to which a fraudulent insurance act has been committed. *Id.* Should DIFS's investigation lead it to conclude that there has been a violation of law, it is required by statute to report it to the state attorney or other prosecuting agency having jurisdiction over the violation. *Id.* If the state attorney does not begin a prosecution within sixty days after receiving the report, or if it declines to prosecute, it must inform DIFS of the reasons. *Id.*

As part of this legislatively mandated anti-fraud program, section 626.989(4)(c) provides insurers and their employees immunity from civil actions, absent fraud or bad faith, arising out of the furnishing of the information required by the statute:

> (c) In the absence of fraud or bad faith, a person is not subject to civil liability for libel, slander, or any other relevant tort by virtue of filing reports, without malice, or furnishing other information, without malice, required by this section or required by the department or division under the authority granted in this section, and no civil cause of action of any nature shall arise against such person:
>
> 1. For any information relating to suspected fraudulent insurance acts or persons suspected of engaging in such acts furnished to or received from law enforcement officials, their agents, or employees;
>
> 2. For any information relating to suspected fraudulent insurance acts or persons suspected of engaging in such acts furnished to or received from other persons subject to the provisions of this chapter;

---

[3] In the current version of the statute, subsection (6) is divided into parts (a)–(c). *See* § 626.989(6)(a)–(c), Fla. Stat. (2023).

3. For any such information furnished in reports to the department, the division, the National Insurance Crime Bureau, the National Association of Insurance Commissioners, or any local, state, or federal enforcement officials or their agents or employees; or

4. For other actions taken in cooperation with any of the agencies or individuals specified in this paragraph in the lawful investigation of suspected fraudulent insurance acts.

Hanover and Arline claim immunity under this provision.

Arline, as an SIU investigator, was tasked with investigating a dispute that arose after Frazier was involved in a minor collision while driving a car owned by a Hanover insured, Marvic Grant. The driver of the other car involved in the collision, Wendy Williams, filed a claim with Hanover. In her sworn statement to Hanover, she said that the collision happened when Frazier swerved into her lane as the cars approached a toll plaza and the front driver's side of his car struck the rear passenger side of her car. She told Hanover there was only minor damage to both cars. Williams wanted to report the collision to the police, however Frazier convinced her not to call the police and, in exchange, Frazier agreed to let Williams make a cell phone video recording in which he admitted he hit the rear passenger side of Williams' car with the front driver's side of his car when he swerved into her lane as the cars approached a toll plaza.[4] Williams also took photos of the damage to both cars.

Williams' claim went unresolved for almost a month while Hanover tried unsuccessfully to get a statement from Grant and Frazier. When

_____

[4] In the video Frazier states he had gotten into an accident with Williams, had pulled over and hit the rear of her car with the front of Grant's car, and that he was "perfectly fine, not hurt, absolutely no injuries, it was a little scuff down the side like that, no G-force or anything, no airbags went off, no nothing . . . ."

the adjuster did finally speak to Frazier, his description of the collision and the resulting damage was different than the account Williams had provided.[5] Frazier told Hanover that as the cars approached the toll plaza, Williams accelerated to get in front of him and the rear passenger side of her car hit the front driver's side of his car which then pushed his car into yellow posts near the toll booth causing damage to the passenger side of his car, not just the driver's side. Relying on Frazier's statement, Hanover's adjuster told Williams that he was holding her fifty percent responsible for the accident and that Hanover would compensate her accordingly. Williams told the adjuster this was unacceptable and that she intended to contact her carrier and retain an attorney.

Unbeknownst to Williams, at the time this took place Grant had filed a claim with Hanover for damage to her car, which included damage to the passenger side of the car. Williams first learned of Grant's claim when she got a subrogation letter from Hanover stating it was holding her responsible for nearly $5,000 in damages to Grant's car. Williams was stunned at the amount because the damage to Grant's car, as well as hers, had been minor.

Angry about the liability determination as well as the amount of damages, Williams contacted a supervisor at Hanover. Subsequently, she learned that Grant, through Frazier, was claiming damages to both sides of her car. Williams disputed Frazier's account and provided Hanover with Frazier's video statement and the photos she had taken of the damage to both cars. She continued her contacts with Hanover asserting her belief that Frazier and Grant were acting fraudulently because they were claiming that both sides of Grant's car were damaged in the collision with her car. After approximately three months, Hanover

---

[5] Hanover was never able to get a statement from Grant.

assigned Arline to investigate the conflicting accounts given by Frazier and Williams.

In the meantime, Williams had already filed a fraud report with DIFS alleging that Frazier and Grant were claiming damage to Grant's car that was not related to the accident in which she was involved. Williams was adamant that there was only minor damage to the driver's side bumper and fender of Grant's car and that there was no impact or damage to the passenger side. Based on Williams' allegations, DIFS opened an investigation.

While DIFS's investigation was ongoing, Arline concluded his investigation and based on Williams' sworn statements, Frazier's video statement obtained by Williams, Williams' photos, Hanover's photos of the damage to the passenger side of Grant's car, and an inspection of the toll plaza, he concluded that the damage to the passenger side of Grant's car was not caused by the collision with Williams.[6] Thus, he concluded Grant should have filed two claims with Hanover, not one, and been subject to two deductibles. As required by section 626.989(6), Arline filed a report with DIFS, noting in the report that it was a supplement or duplicate of the report Williams had filed several months earlier.

As part its investigation, DIFS's investigator, Tom Eberhart, interviewed Williams, reviewed her video of Frazier and the photos she took after the accident, interviewed Grant's neighbor and stepdaughter, and visited the toll plaza. Eberhart also obtained a copy of Arline's file along with Hanover's claims file. He was unable to obtain statements from either Grant or Frazier. Ultimately, Eberhart determined that there was probable cause to believe that Grant and Frazier "made material

---

[6] Despite repeated attempts, he was not able to obtain statements from Grant or Frazier.

misrepresentations of fact in their claim" with Hanover in that they claimed Grant's car was damaged on the passenger side during the accident when it was not. He concluded that the damage on the passenger side was caused by a second accident that "was not disclosed." He then referred the matter to the state attorney's office. Frazier and Grant were charged with making a false statement to an insurance company and grand theft. After a jury found Frazier not guilty, he filed this action for malicious prosecution against Hanover and Arline.[7]

On appeal, Hanover and Arline argue the trial court erred in denying their claims of immunity because all Arline did was investigate and report the suspected fraud as he was statutorily required to do. *See* §§ 626.989, 626.9891. The undisputed record evidence shows that Arline was tasked with investigating after Frazier gave conflicting accounts of the accident—one on the post-accident video and one to the adjuster. Further, Frazier's statement to the adjuster not only conflicted with his video statement, but it was also at odds with Williams' sworn statements. Arline also visited the accident scene, reviewed photos supplied by Williams, photos taken by Hanover's adjuster, and he concluded that the damage to the passenger side of Grant's car was not caused by the collision with Williams. Because this information gave Arline a basis to believe that Frazier had made a false statement in connection with Grant's claim, pursuant to the anti-fraud statute he was required to supply the information he had gathered to DIFS. *See* § 626.989(6).

Absent fraud or bad faith, section 626.989(4)(c) immunizes insurers and their employees if they have done what is required by the anti-fraud statute. *See Saenz v. State Farm Fire & Cas. Co.*, 861 So. 2d 64, 67 (Fla.

---

[7] The charges against Grant were dropped before trial.

3d DCA 2003) (affirming the trial court's grant of summary judgment for the defense based on immunity in an action for malicious prosecution, where the undisputed record evidence showed that neither State Farm nor its investigator acted fraudulently or in bad faith in reporting the matter to DIFS).  Frazier's evidence entirely failed to show fraud or bad faith in connection with Arline's investigation or report to DIFS.[8] Accordingly, we conclude that Arline and Hanover were statutorily immune from suit, and we reverse the judgment in favor of Frazier and remand for entry of judgment in favor of Hanover and Arline.

Reversed and remanded.

SILBERMAN and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

_____

[8] We have not overlooked Frazier's argument that Arline's report in places confuses left and right when referring to the location of the damage Hanover alleges was sustained in a second collision.  In other words, in places the report says "left" instead of "right."  We reject the argument that this error, which is obvious when viewed in context, could have even been misleading, much less amount to fraud or bad faith.  The gist of the suspected fraud was that Grant, through Frazier, was claiming damages to both sides of her car—not just one side—from the collision with Williams.